## WIREBACK v. CAMPBELL et al.
### WIREBACK et al. v. SAME.

(District Court, D. Maryland. November 3, 1919.)

1. PATENTS ⬤≈328—FOR EXTENSION SHOE VALID AND INFRINGED.
   The Wireback patent, No. 736,186, for an extension shoe, *held* valid and infringed.
2. COPYRIGHTS ⬤≈9—ILLUSTRATING CUTS SUBJECT OF COPYRIGHT.
   Cuts designed and prepared by persons of skill and artistic capacity of articles of manufacture used to illustrate advertising catalogues *held* subject to copyright under Copyright Act.
3. COPYRIGHTS ⬤≈26—DEFECTIVE APPLICATION AFFECTING VALIDITY.
   That an application for a copyright by a firm did not set forth the citizenship of the applicants, as required by a rule, *held* not to invalidate the copyright, under Copyright Act, where attention was not called to the omission, and it is shown that the applicants were citizens.

In Equity. Suits by Joseph F. Wireback and by said Wireback and others against Thomas D. Campbell and others, partners doing business as the Maryland Orthopedic Company. Decrees for complainant.

A. Taylor Smith, of Cumberland, Md., and Edward A. Lawrence, of Pittsburgh, Pa., for plaintiff.

Horace P. Whitworth, of Westernport, Md., and A. P. Greeley, of Washington, D. C., for defendants.

ROSE, District Judge. In the first of the above-entitled causes, the infringement of the first, second, and fourth claims of letters patent No. 736,186, for an extension shoe, issued to the plaintiff on the 11th of August, 1903, is charged. In the second it is alleged that two copyrighted trade catalogues of the plaintiffs have been infringed by the reproduction of certain original cuts contained in them. As much of the testimony is common to both cases, they were by agreement tried together.

### Patent Case.

[1] I see no reason to question the validity of any of the claims in suit. The defendants put certain prior patents in evidence. None of them appear to anticipate that now in controversy. There was no attempt by expert or other testimony to show that any of them did. The evidence of infringement is clear. The defendants deliberately set out to make the plaintiff's device and they did. They may have made immaterial modifications or additions, but they reproduced every element of the plaintiff's claim. He is entitled both to an injunction and to an accounting.

### Copyright Case.

The plaintiffs, who did an extensive business in making and selling orthopedic devices, including the extension shoe before mentioned, were the proprietors of two copyrighted catalogues, each of which contained a number of cuts of the appliances in which they dealt. The drawings, from which these cuts were made, had been executed by persons specially skilled in such work, under the direction and supervision of the plaintiff Wireback.

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

For a number of years one Cox had been in the employ of the plaintiffs. Early in 1918 he spent a Sunday with the defendant Hoffa. They agreed that, in view of the World War, the business of making and selling artificial limbs would be profitable. They looked over the catalogues of the plaintiffs, and then and there made up their minds to go into the business; Hoffa to furnish the money and Cox the experience.

The latter thereupon left the plaintiffs' employ, taking with him a number of their catalogues, and proceeded to get up an advertisement of the wares of the new concern. It is clear that he and Hoffa, together with the other defendants, who subsequently came into the scheme, expected to make and sell goods just like those of the plaintiffs. For that purpose, Cox went to the very concern that had printed the plaintiffs' catalogue, and had it copy some of the copyrighted cuts, especially those representing the patented extension shoe.

Cox and other of the defendants induced some of the plaintiffs' workmen to leave their former employment and to go into that of the new concern.

[2] There is no denial that there has been an infringement, if the cuts could be copyrighted and legally were. They were originally designed and prepared by persons of skill and artistic capacity. The defendants contend that, as they were merely parts of advertising pamphlets, the only way in which they could be copyrighted, if at all, was by registry in the Patent Office, and not elsewhere. They rely on Mott Iron Works v. Clow (C. C.) 72 Fed. 168, and similar cases. All that need now be said on this point is that in Westermann Co. v. Dispatch Printing Co., 249 U. S. 100, 39 Sup. Ct. 194, 63 L. Ed. 499, pictorial illustrations of styles of women's apparel were held properly copyrightable under the act of 1909 (Act March 4, 1909, c. 320, 35 Stat. 1075).

[3] The defendants assail the validity of the copyrights because the plaintiffs, in their application for them, did not set forth their citizenship, as required by copyright rule 31. The applications were made and the registrations were granted in the firm name, as was, of course, permissible. Scribner v. Allen (C. C.) 49 Fed. 854. The names of the partners were not given. In the 1911 application, nothing was said as to the citizenship of the firm. In that of 1916 it was said to be a citizen of the United States, something which defendants say is legally impossible.

Assuming so much to be true, and that the 1916 application was in consequence no better than that of 1911, is the copyright which the plaintiffs sought to secure, and which they supposed they had obtained, worthless? The error was not noticed by the Register of Copyrights. If it had been, it would, of course, have been called to plaintiffs' attention, and would have been at once corrected. All the statute requires is that the author shall be a citizen or a resident alien. There is proof, slight, but sufficient, in the absence of contradiction, from which the court may infer that all the plaintiffs, and for that matter all the artists who co-operated in making the cuts, were residents of Pennsylvania. Patterson v. Ogilvie (C. C.) 119 Fed. 451.

If there was any doubt as to it, I would direct the case to be reopened

for further evidence on the subject; but I am certain it would be a mere waste of time to do so. I am confident that everybody concerned had the residential qualification. The sole question is whether the omission to state the fact in the application invalidates the copyright. So to hold would be to run counter to the whole spirit and much of the purpose of the act of 1909. All through it, there is evidence of the intention to make sure that in the future authors and publishers shall not lose their rights as the result of unintentional failure to comply with the details of statutory requirements, and that Congress wished to avoid the injustices that, under the old law, courts were compelled to sanction. If that be so, a thoughtless oversight to do everything directed by one of the copyright rules cannot be allowed to have an effect which Congress was at pains to see should not follow from the neglect of many of the prescriptions of the statute itself.

The plaintiffs are entitled to an injunction, and to a decree for the statutory $1 for each of the infringing copies found in defendants' possession, and for the destruction of such copies.